## NATIONAL BRONZE & ALUMINUM FOUNDRY CO. v. PERMOLD CO.

### No. 8308.

Circuit Court of Appeals, Sixth Circuit.
April 10, 1940.

Carlton Hill, of Chicago, Ill., and William J. Wesseler, of Cleveland, Ohio, (Saywell & Wesseler, of Cleveland, Ohio, on the brief), for appellant.

George F. Scull, of New York City, (Evans & McCoy, and Lloyd L. Evans, all of Cleveland, Ohio, on the brief), for appellee.

Before SIMONS, ALLEN and ARANT, Circuit Judges.

ALLEN, Circuit Judge.

Appeal from a decree of the District Court holding Claims 3 and 4 of Fahlman Patent 1,770,368, issued July 8, 1930, and owned by appellee, valid and infringed. The case had previously been referred to a special master who concluded that the claims were invalid, but if valid, were not infringed. The claims are printed in the margin.[1]

The patent is for a structure and relates to permanent molds to be used in the manufacture of agitators for washing machines. Permanent molds are made of cast iron or other metal. They are distinguished from sand molds, which are used but once, in that they may be used repeatedly in making castings. Molten metal is poured into permanent molds through openings called sprues, and in the patent in suit is introduced under gravity pressure created by the molten metal itself. If the metal is forced into the mold

[1] "3. A permanent mold for forming thin walled castings having a base portion and an upstanding portion projecting from said base portion comprising a plurality of separable mold members recessed to define a casting cavity in which the portion of the cavity for forming the base portion of the casting is substantially horizontally disposed and the portion of the cavity for forming the upstanding portion of the casting extends substantially vertically upwardly from the portion of said cavity defining the base portion, said mold sections being recessed to provide a continuous ring shaped sprue cavity surrounding the periphery of said base portion, a relatively narrow peripheral gate communicating with said sprue cavity and with substantially the entire periphery of said base portion, said mold members being further recessed to provide a plurality of sprue cavities through which casting metal may be fed simultaneously to said ring sprue cavity, whereby molten casting metal may be fed simultaneously into the entire periphery of said base portion and flow through the base portion of the casting cavity upwardly into the upwardly projecting portion of the cavity.

"4. A mold for forming a thin walled casting having a substantially horizontal base portion, a hollow stem extending upwardly from said base portion and wing portions extending upwardly from said disc portion, said mold comprising a plurality of permanent mold members shaped to define a casting cavity with said base portion in a horizontal position and said stem portion in upstanding position, said mold having peripheral ring sprue cavity extending around the periphery of said base portion, a relatively narrow gate portion communicating with said ring sprue cavity and with substantially the entire periphery of said base portion of the casting cavity and sprue cavities arranged so that casting metal may be supplied simultaneously therethrough to said ring sprue, said sprue cavities being disposed opposite said wing cavities to provide an adequate supply of metal to said wing cavities and to heat the portions of the mold adjacent said wing cavity, and a core arranged to be moved upwardly intermediate said mold members to form said hollow stem portion."

under external pressure, the process is die casting. The openings from the sprues into the mold cavity are called gates. A permanent mold is usually constructed in sections hinged together so that it will come apart to facilitate removal of the castings.

The washing machine agitator produced by the mold of the patent in suit is a thin casting of aluminum, having a shape resembling a bell, with wings projecting on the outer surface. The use to which it is put requires that it be as smooth as possible, but this quality is difficult of attainment, partly because of the irregular shape, and also because of the peculiar characteristics of aluminum as manifested in the process of casting. If the temperature of the metal is high, the crystals of the aluminum casting will be large, and loss of strength will result.

Another difficulty arises from the tendency of aluminum to shrink in an unusual degree when it solidifies, leaving so-called "hot spots" or holes in the surface of the casting. In the freezing process, as the metal shrinks, it draws additional molten metal from the supply adjacent to compensate for the shrinkage, and unless this additional molten metal is supplied as the casting progressively freezes, "hot spots" result which make the casting defective. Die casting does not assist in solving the problem, for when the metal is forced into the mold under external pressure, the air in the mold is unable to escape fast enough and is imprisoned in the metal as it solidifies, thus producing a porous and defective casting. It is essential, therefore, to pour the aluminum into the mold at the lowest temperature at which the metal remains liquid, to provide a structure so arranged that the metal will flow to all parts of the mold before it solidifies, and at the same time to prevent the unequal freezing which tends to concentrate the shrinkage at the points last to cool, thus avoiding the creation of the "hot spots" in the castings.

Fahlman claimed that he solved the problem by his mold, in which the agitator is positioned vertically with the extended part or base at the bottom thereof. The molten metal is introduced simultaneously through the three sprues at the top of the mold and flows into a continuous ring-shaped sprue cavity at the base of the mold, thence through a narrow peripheral gate into the mold cavity filling it from the bottom toward the top until the excess metal appears in the risers at the top of the mold. Fahlman provides for a core "to be moved upwardly intermediate said members to form said hollow stem portion." In Claim 4 Fahlman provides for the sprue cavities to be adjacent the wing cavities of the agitator so that as the molten metal is poured in the sprues, it will heat the mold around the wing cavities and thus prevent undue chilling, which retards the freezing at those points. The District Court found that "Uniformity of in-flow and distribution to avoid 'hot spots' and the consequent simultaneous freezing of the metal to form the casting" were accomplished by the structure of the patent.

Appellant asserts the usual defenses of (1) want of invention, (2) anticipation by prior use, and (3) non-infringement.

The provision for a circular sprue and a circular gate to feed the molten metal into the bottom of the cavity was concededly old in the molding art. See Parry, 6,805 (1849), and Trotz, 639,005 (1899). It is well established by patents too numerous to mention here that it was old in the foundry art to fill the mold through a "relatively narrow gate." We regard Grey, 1,455,248 (1923), and Bungay, 1,516,667 (1924), relied upon by appellant, as inapplicable, for they relate to die casting, which does not produce a satisfactory aluminum casting because of its high porosity. Rowand, 41,786 (1864), and Hardin, 1,019,248 (1912), provide for hinged sectional permanent molds. None of the elements of the mold were new. However, the special master concluded, and the District Court found, that the claims in suit are not invalid for want of invention over the prior art because no one prior art patent discloses all of the elements of Fahlman's structure in substantially the same combination, and the prior art patents taken collectively do not anticipate the precise disclosure of Fahlman.

Appellant urges that Fahlman is anticipated by the prior use of the Bohn Aluminum and Brass Corporation, which manufactured a support for a washing machine agitator and also the agitator itself. Much testimony and a large part of the master's report and the briefs of the parties are concerned with the question of Fahlman's date of conception and whether he was diligent in reducing his invention to practice so as to avoid the Bohn structure as being prior use. Assuming, but not deciding, that Bohn is prior to Fahlman, we do not regard the Bohn use as anticipating Fahlman. Bohn does not employ the peripheral sprue and gate of Fahlman, but has only an arcuate

gate in the support mold and two separated arcuate gates in the agitator mold. Fahlman feeds only from the bottom, while Bohn provides vertical feeder gates branching off from the sprues to the upper part of the mold cavity. Appellant follows Bohn rather than Fahlman, and its molds differ both structurally and functionally from the Fahlman mold.

Assuming, but not deciding, that the claims in suit are valid, we observe that Fahlman feeds exclusively from the bottom, filling the mold cavity from the bottom towards the top, while appellant's mold uses the bottom gating only for partially filling the mold and provides vertical gating, running the full length of two wings connected by cross sprues with the vertical feeder sprues, for filling the upper parts of the mold cavity. Fahlman has a continuous ring-shaped sprue cavity connecting with the peripheral gate communicating with the entire periphery of the base, while appellant's bottom gating and feeding sprue extend less than thirty per cent of the total circumference of the base of the mold cavity. This small arcuate sprue and gate cannot be regarded as covering "substantially the entire periphery of said base portion," as provided in Claim 3. Nor does appellant employ vertical sprue cavities adjacent the wing mold cavities as in Fahlman's Claim 4, for pre-heating the mold cavity. Appellant has but two feeder sprues while Fahlman has three.

In addition, appellant does not adopt Fahlman's principle of simultaneous freezing to avoid "hot spots," but, as said by the District Court in its opinion, employs "progressive filling and solidification." In appellant's structure, as the metal freezes in the bottom portions of the mold, the deficiency resulting from the shrinkage is supplied from the molten metal in the bottom sprue cavity. The upper part of the cavity is supplied with metal through the vertical gates fed by cross sprues connecting with the vertical sprues which function when the bottom gate is frozen and the molten metal backs up in the vertical sprues and overflows into the cross sprues. Thus the mold is progressively filled and the casting solidifies from the bottom toward the top. The District Court was in error in holding that a mold which provides for progressive filling and solidification of the casting infringes a patent for a mold of different structure which causes simultaneous freezing. That which is not literally within the claim of the patent does not infringe. Goodrich v. Ford Motor Co., 6 Cir., 97 F.2d 427, 431.

The decree is reversed and the case is remanded for proceedings in conformity with this opinion.